CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 22 2009
JOHN F. CORCORAN, CLERK
BY:
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| MCKAY CONSULTING, INC., ) | |
| ) | Civil Action No. 5:09-CV-00054 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Hon. Glen E. Conrad |
| ROCKINGHAM MEMORIAL HOSPITAL, ) | United States District Judge |
| ) | |
| Defendant. ) | |

McKay Consulting, Inc. ("McKay") filed this diversity action against Rockingham Memorial Hospital ("RMH") on July 16, 2009 asserting five claims. Count One seeks a declaratory judgment that an oral contract exists. Count Two seeks a declaratory judgment that an implied-in-fact contract exists. In Counts Three, Four and Five, McKay asserts claims based on promissory estoppel, unjust enrichment, and misappropriation of trade secrets, respectively. The parties have stipulated to the dismissal of McKay's promissory estoppel claim. The case is presently before the court on a motion filed by RMH, in which it argues that all of McKay's claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, RMH's motion to dismiss will be granted in part and denied in part.

### Background

McKay is a Louisiana corporation with its principal place of business located in Shreveport, Louisiana. McKay works with hospitals across the country to increase hospital reimbursement rates from government-sponsored programs. RMH is a Virginia not-for-profit corporation located in Harrisonburg, Virginia.

According to the complaint, McKay has spent significant time and money formulating an

idea to increase the reimbursement rates for certain hospitals. On May 18, 2009, one of McKay's principals, Bob Brown, telephoned RMH's Accounting Director, Susan Holsinger. Brown explained that he would disclose the idea to RMH, but only if RMH (1) agreed to keep the idea confidential and (2) agreed to retain McKay as its agent to implement the idea if RHM chose to do so, and pay McKay 20% of any increased reimbursement over four years. (Compl. ¶ 27.) Holsinger accepted the proposed terms and agreed to meet with McKay to discuss the issue further. On May 26, 2009, Brown emailed Holsinger and reiterated the terms under which McKay would disclose its idea. (Compl. Ex. A.) Under the terms of the offer, if RMH was already aware of the idea or working on implementing it, RMH would have no contractual obligation to McKay. (Compl. Ex. A; ¶ 31).

On June 3, 2009, Brown and Mike McKay met with RMH officers in Harrisonburg, Virginia. McKay reiterated the terms under which it would disclose its idea, and Holsinger again indicated that RMH agreed to those terms. McKay then disclosed its idea to RMH. McKay alleges that Holsinger expressly stated that RMH was not previously aware of the idea. Holsinger later brought Michael King, RMH's Chief Financial Officer, into the meeting. King stated that RMH wanted a discount from McKay's 20% fee.

The complaint then alleges that on June 8, 2009, during a telephone conversation, King stated that unless McKay agreed to reduce its fee, RMH would disclose McKay's idea to another consultant to pursue the additional reimbursement. King also indicated that RMH had no contract with McKay. On June 11, 2009, McKay responded to King with a letter insisting that RMH and McKay had an agreement. (Compl. Ex. B.)

On July 16, 2009, McKay filed its complaint against RMH. In it, McKay seeks (1) a

judgment declaring that McKay and RMH entered into an oral contract, and (2) a judgment declaring that McKay and RMH entered into an implied-in-fact contract. McKay also asserts claims on the basis of (3) unjust enrichment and (4) misappropriation of trade secrets.[1]

On August 11, 2009, RMH filed the instant motion. The court conducted a hearing on October 6, 2009. The motion is now ripe for the court's review.

## Discussion

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]" Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, 556 U.S. at ___, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

When addressing a motion to dismiss under Rule 12(b)(6), a district court must exclude matters outside the pleadings. In this case, the plaintiff submitted a 116-page document

---

[1] McKay also asserted a claim of promissory estoppel, which will be dismissed pursuant to McKay's stipulation of dismissal.

3

embodying its "idea." Because McKay's idea, as embodied in the proposal, is integral to the complaint and its authenticity has not been challenged by either party, the court may properly consider it. See American Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (holding that a court may consider certain extrinsic evidence in ruling on a 12(b)(6) motion if it was "integral to and explicitly relied on in the complaint" and the opposing party does not challenge its authenticity).

I.   **Novelty Requirement**

RMH contends that McKay's idea cannot suffice as consideration because it is neither novel generally, nor novel to RMH. The parties recognize that several jurisdictions have adopted divergent approaches to the issue of whether novelty should be required in contract cases where the bargained-for consideration is disclosure of an idea.

Under one approach, a general novelty requirement, sometimes termed "originality," is imposed in contract-based submission of idea cases. The defendants urge this approach, and point to decisions from Florida and Connecticut. In Garrido v. Burger King Corp, for example, the plaintiff had alleged breach of implied contract and misappropriation based upon the allegedly unauthorized and uncompensated use of ideas contained in a proposed advertising campaign. 558 So.2d 79, 80 (Fl. Ct. App. 1990). The Court of Appeal of Florida adopted a "novelty requirement in cases involving state law causes of action based on the conveyance of an idea." Id. at 84. The Court reasoned that "[i]f the idea revealed turns out to be one already within the public domain, then it can not constitute a protectible property right which can be misappropriated or contracted for." Id. The novelty requirement, it reasoned further, prevents a person from being able to monopolize by contract an idea that is common and general to the

whole world. Id. (internal quotations and citation omitted). The Court's reasoning in that case indicates that, in order to constitute sufficient consideration, the idea must be a protectible property interest. Indeed, in another case cited by the defendant, Masline v. The N.Y., New Haven & Hartford R.R. Co., the Court stated that because the plaintiff's idea was a matter of common knowledge, he "had therefore no property right to protect which would make his idea a basis of consideration for anything." 112 A. 639, 641 (Conn. 1921). Although certain portions of the opinion in Masline seem to recognize a general novelty requirement, there is also language which might be read to support a novelty to the buyer standard with the safeguard that certain ideas are so unoriginal that they cannot serve as consideration as a matter of law. Id. at 641 ("When information is proffered as the consideration for a contract, it is necessarily implied–is indeed of the essence of the proffer–that the information shall be new *to the one to whom it is proffered*") ("The imparting of information, in a situation like this, must involve an active process resulting in arousing or suggesting ideas or notions *not before existent in the mind of the recipient*.") (emphasis added).

This alternative reading of Masline comports with a pragmatic approach now applied under New York law. Under that rule, a distinction is drawn between, on the one hand, the requirement of "novelty to the buyer" in contract-based claims, and, on the other, "novelty generally" for property-based misappropriation claims. Under this approach, a plaintiff's property-based claims for misappropriation require novelty generally because unoriginal ideas have no value as property. A plaintiff's pre-disclosure contract-based claim, however, requires only a showing of novelty to the buyer in order for an idea to provide sufficient consideration. This is so, for, "[w]hile an idea may be unoriginal or non-novel in a general sense, it may have

5

substantial value to a particular buyer who is unaware of it and therefore willing to enter into contract to acquire and exploit it." Nadel v. Play-By-Play Toys & Novelties, Inc., 208 F.3d 368, 377 (2nd Cir. 2000) (interpreting New York law) (citations omitted). Nevertheless, in some instances, "an idea may be so unoriginal or lacking in novelty that its obviousness bespeaks widespread and public knowledge of the idea, and such knowledge is therefore imputed to the buyer." Id. at 378 (citations omitted). Thus, under this approach, the relevant standard in pre-disclosure contract cases involving the submission of an idea is novelty to the buyer, with the proviso that some ideas which are manifestly unoriginal will be imputed to the buyer. See also Apfel v. Prudential-Bache Secs. Inc., 616 N.E.2d 1095 (N.Y. 1993).

Finally, in an approach urged by the plaintiff, no novelty requirement is imposed in submission of idea cases. The plaintiff cites to the law of California and Alaska as examples of this approach. In Chandler v. Roach, the Court of Appeal of California found that certain jury instructions regarding novelty in the plaintiff's implied-in-fact contract claim were prejudicially erroneous. 319 P.2d 776, 783 (Cal. Ct. App. 1957). In so holding, the Court stated that "[w]e believe that if a producer obligates himself to pay for the disclosure of an idea, whether it is for protectible or unprotectible material, in return for a disclosure thereof he should be compelled to hold to his promise." Id. at 781. It went on to state that "[t]here is nothing unreasonable in the assumption that a producer would obligate himself to pay for the disclosure of an idea which he would otherwise be legally free to use, but which in fact, he would be unable to use but for the disclosure."[2] Id. The decision in Chandler has been cited by other jurisdictions as representative

---

[2] The court notes that this statement seems to presume that, for the producer to have been "unable to use [it] but for the disclosure," the idea must have previously been unknown to him.

of the "California approach," and has indeed been used as the basis for not imposing a novelty requirement in those jurisdictions. See, e.g., Reeves v. Alyeska Pipeline Service Co., 926 P.2d 1130, 1141-42 (Alaska 1996) (stating that it "prefer[red] the California approach" dispensing with novelty and that "[i]f parties voluntarily choose to bargain for an individual's services in disclosing or developing a non-novel or unoriginal idea, they have the power to do so.") Nevertheless, Chandler has been criticized as departing from other California cases, which might be read so as to adopt an approach whereby novelty is required, but can be waived either by an express understanding that the idea to be disclosed is not novel or by unequivocal conduct. See Stanley v. Columbia Broadcasting Sys., Inc., 221 P.2d 73, 85 (Cal. 1950) (Traynor, J., dissent) ("It is not a reasonable assumption . . . in the absence of an express promise, or unequivocal conduct from which one can be implied, that one would obligate himself to pay for an idea that he would otherwise be free to use."); Desny v. Wilder, 299 P.2d 257, 266 (Cal. 1956) (stating that Justice Traynor's dissent is accepted as the law of California in this regard).

    The cases addressing this particular issue struggle with the problems inherent in contract claims where the bargained-for consideration is disclosure of an idea which is unknown to the buyer at the time of contracting. On the one hand, requiring novelty in some form seems to account for the fact that there is no equity in enforcing a contract when it turns out that the bargained-for consideration—the idea—was already possessed by the buyer or by the world at large. The novelty requirement ensures that the consideration in these cases in fact has value, either generally or to the buyer. On the other hand, justifications exist for upholding pre-disclosure contracts regardless of novelty. A non-novel idea may be valuable merely because of its timing or the manner in which it is presented, and the parties are free to bargain for the

disclosure of an idea. Moreover, the act of disclosure itself can be analogized to the services of a doctor or lawyer, neither of which typically provide products that are novel or original. See Reeves, 926 P.2d at 1141-42. By enforcing contracts regardless of novelty, buyers of an idea may not later back out of a contract because they later determined in hindsight that they could have had the same idea for less. See id.

The court in the present case is unaware of any Virginia case law that imposes a novelty requirement or that discusses the policy concerns outlined above in submission of idea cases in any context. As such, it might well be concluded that there is no novelty requirement under Virginia law, especially in a jurisdiction that remains "committed to the view that parties may contract as they choose so long as what they agree to is not forbidden by law or against public policy." Ulloa v. QSP, Inc., 624 S.E.2d 43, 48 (Va. 2006) (quoting Coady v. Strategic Resources, Inc., 515 S.E.2d 273, 275 (Va. 1999)).

Nevertheless, the court's review of the case law in this area suggests that certain policy considerations might support some sort of novelty requirement in pre-disclosure contracts. However, even if Virginia were to adopt a novelty requirement, there is no reason to believe either as a matter of policy or as a matter of law that the Virginia courts would require a showing of anything more than novelty to the buyer in pre-disclosure cases. Stated differently, no greater showing is necessary to enforce the primary policy objective of ensuring that a buyer is not inequitably forced to pay for a valueless idea.[3]

---

[3] Thus, the court agrees with RMH's argument that McKay cannot expect to recover, under any theory, if the idea conveyed was so obvious or well-known to persons skilled in such matters as to render it worthless. However, even after reviewing the written proposal, the court is unable to conclude as a matter of law that McKay's formulation falls within this category. This is a subjective issue, and may require input from experts. In any event, as previously noted, McKay

A definitive determination as to how Virginia courts would rule on this issue is, however, obviated by the fact that McKay specifically provided in its offer that, if RMH was aware of its idea, RMH would not be bound by the pre-disclosure contract. Thus, in this particular case, without novelty to the buyer, there is no enforceable contract. As such, a factual question remains as to whether RMH was aware of the idea presented by McKay. McKay asserted in its complaint that Holsinger "expressly stated that RMH was not previously aware of McKay's idea." (Compl. ¶ 39.) Because McKay has asserted viable contractual claims against RMH, even assuming a novelty to the buyer requirement, the court will deny RMH's motion to dismiss.

## II.    Implied-in-Fact Contract

Virginia law recognizes that parties may enter into an implied-in-fact contract, which is formed not by express agreement, but rather by agreement inferred from the conduct of the parties. See Hendrickson v. Meredith, 170 S.E. 602, 605 (Va. 1933). RMH argues that Count Two of the complaint, which asserts a claim based on implied-in-fact contract, should be dismissed because it contains contradictory allegations of express contract. The Federal Rules, however, specifically allow a party to state many separate claims, regardless of consistency. Fed. R. Civ. P. 8(d). McKay has pleaded alternative theories of recovery in Counts One and Two, for express and implied-in-fact contract, respectively. Under Count One, McKay alleges that "RMH agreed to these terms orally." (Compl. ¶ 62). Under Count Two, McKay alleges that RMH agreed to McKay's terms through its conduct. (Compl. ¶ 69.) Although McKay may be unable to prevail on both theories, at this stage, McKay is entitled to allege alternative facts and theories

---

has affirmatively alleged that RMH representatives admitted that they were unaware of McKay's recommended approach at the time of the June 3 meeting. In the face of such allegations, the court concludes that the complaint cannot be dismissed at this time.

9

which support different and contradictory claims for relief. Here, RMH does not concede the existence of a contract and in fact vigorously disputes whether a contract exists between the parties. Accordingly, McKay is not foreclosed from alleging the existence of both an express contract and a contract implied-in-fact. See Fed. R. Civ. P. 8; see also United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 990 (4th Cir. 1981) (stating that Rule 8 "permits the pleading of alternative or inconsistent claims").

### III. Unjust Enrichment

Under Virginia law, a claim for unjust enrichment requires proof of (1) the plaintiff's conferring of a benefit on the defendant, (2) the defendant's knowledge of the conferring of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that render it inequitable for the defendant to retain the benefit without paying for its value. Microstrategy, Inc. v. Netsolve, Inc., 368 F. Supp. 2d 533, 537 (E.D. Va. 2005). McKay's complaint is far from clear as to the nature of the benefit conferred, yet it appears to assert that the benefit takes the form of the potential increase in reimbursement rates that could be had by implementing McKay's idea.[4] For example, McKay indicates that the benefit conferred consists of the increased measure of reimbursements that will result through use of the idea. (Compl. ¶ 86) ("RMH is fully aware of the significant benefit that McKay's idea *will* have for RMH") (emphasis added). This is confirmed by McKay's allegation that RMH's knowledge of the benefit—the potential profits from future reimbursements—arose because "RMH invited McKay to undertake calculations of the benefit based on proprietary information that RMH gave to

---

[4] McKay's complaint does, in one instance, seem to indicate that the benefit is the idea itself, regardless of whether it is used or not. (Compl. ¶ 88) ("[i]t is inequitable for RMH to retain the benefit of McKay's idea without reimbursing McKay for the full value of its idea").

McKay during the June 3, 2009 meeting." (Compl. ¶ 87).[5] The benefit to be conferred is purely speculative, as McKay has not alleged that RMH has used the idea to derive some benefit. See Firestone v. Wiley, 485 F. Supp. 2d 694, 704 n.12 (E.D. Va. 2007) ("even assuming plaintiff's amended complaint were read to imply that the 2006 appraisal was sent to defendants, receipt of the appraisal alone is insufficient to state a claim for unjust enrichment") (citing Eckstone & Assocs. Ltd. v. Keilp, No. 141807, slip op. at *3-4 (Va. Cir. Dec. 29, 1995) (dismissing unjust enrichment claim because one of the requirements for that claim is that services were accepted by the person sought to be charged, used and enjoyed by him or her)); see also Freedman v. Beneficial Corp., 406 F. Supp. 917, 923 (D. De. 1975) (plaintiff who provided business ideas to defendants in expectation of compensation had right to sue "as soon as defendants began using his idea for their benefit"). Because McKay has failed to allege that RMH has used or benefitted from its idea, RMH's motion to dismiss will be granted.

### IV.  Misappropriation of Trade Secrets

To state a claim under the Virginia Uniform Trade Secrets Act ("VUTSA"), a plaintiff must allege sufficient facts to establish (1) that the information at issue is a trade secret and (2) that the defendant misappropriated it. The Act defines a "trade secret" as:

> information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:
> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
> 2. Is the subject of efforts that are reasonable under the circumstances to

---

[5] The complaint states that "Ms. Holsinger . . . began providing McKay with proprietary RMH data to more precisely calculate how large the reimbursement inquiries would be." (Compl. ¶ 38.)

11

maintain its secrecy.

Va. Code § 59.1-336. Additionally, "misappropriation" is defined as:

1. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
2. Disclosure or use of a trade secret of another without express or implied consent by a person who
   a. Used improper means to acquire knowledge of the trade secret; or
   b. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was
      (1) Derived from or through a person who had utilized improper means to acquire it;
      (2) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;
      (3) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
      (4) Acquired by accident or mistake.

Id.

Here, RMH argues that Count Five should be dismissed because it contains insufficient facts to establish either that there is a trade secret or that it was misappropriated. Having reviewed the complaint, the court agrees with RMH that the complaint does not contain sufficient allegations to state a claim for misappropriation of trade secrets. A trade secret is defined as information that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." Va. Code § 59.1-336. "The crucial characteristic of a trade secret is secrecy rather than novelty." Dionne v. Southeast Foam Converting & Packaging, Inc., 397 S.E.2d 110, 113 (Va. 1990).

In order to be protected as a trade secret, the information in question "must be secret, and must not be of public knowledge or of a general knowledge in the trade or business." Hoechst

12

Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 418 (4th Cir. 1999) (citations omitted). In evaluating South Carolina's Uniform Trade Secrets Act, the Court in Hoechst Diafoil held that the public filing of a document with a district court did not necessarily destroy the secrecy of a technique developed to apply coatings to polyester films. Id. at 419. In so holding, the Court stated that: "The comment to . . . the Act suggests the types of disclosures that render information 'readily ascertainable': 'Information is readily ascertainable if it is available in trade journals, reference books, or published materials.' . . . Such widely-disseminated sources are, we believe, qualitatively different from the files of a single district court [at issue in this case]." Id. Yet, according to McKay's complaint and the court's review of the document embodying the idea, McKay's idea is found in widely-disseminated information. McKay alleges that it analyzed "statutes and regulations" and "data published by the Center for Medicare and Medicaid Services." (Compl. ¶¶ 11, 13.) Such information was readily ascertainable by proper means—namely, by reference to the widely known and published laws and regulations of the United States—and as such was "generally known" to other persons who could obtain economic value from its disclosure or use—namely, other consulting groups like McKay or hospitals like RMH. See, e.g., Religoius Tech. Ctr. v. Netcom On-Line Commun. Servs., 923 F. Supp. 1231, 1256 (N.D. Cal. 1995) (stating that "it requires no great leap to conclude that because more than 25 million people could have accessed the newsgroup postings [on the Internet], these works would lose their status as secrets" and were thus "generally known"). Though VUTSPA permits "combination" trade secrets, the information at issue here, advice based on an understanding of various published laws and regulations, is qualitatively different from, for example, a unique combination of utility programs which interact to create a software program. See, e.g., Integrated

Cash Mgmt. Services, Inc. v. Digital Transactions, Inc., 920 F.2d 171, 174 (2nd Cir. 1990). In short, McKay's idea was "readily ascertainable" and could have been independently formulated by any of the hospitals it approached or by a competitor, and indeed its offer to RMH contemplated this possibility. Although this consideration does not render the idea valueless for the purpose of contract law, it does foreclose its use and protection as a trade secret. Accordingly, RMH's motion to dismiss will be granted as to this count.

V.   **Leave to Amend**

In its brief, McKay requested that it be granted leave to amend its complaint in the event the court granted RMH's motion to dismiss in part or in whole. If McKay learns that RMH has implemented or is in the process of implementing McKay's idea, then McKay may seek leave to amend its complaint and refile its claim for unjust enrichment. At this time, however, McKay's motion for leave to amend shall be denied.

### Conclusion

For the foregoing reasons, the court concludes that the defendant's motion to dismiss shall be granted in part and denied in part.

The Clerk is directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 22ᵈ day of October, 2009.

_____
United States District Judge